UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| US BANK TRUST NATIONAL ASSOCIATION, not in its individual capacity but solely as owner trustee for VRMTG Asset Trust, <br><br> Plaintiff, <br><br> v. <br><br> DAVID W. THOMAS, et al., <br><br> Defendants, and <br><br> INTERNAL REVENUE SERVICE, <br><br> Party-in-Interest. | 2:19-cv-00361-JDL |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff US Bank Trust National Association, not in its individual capacity but solely as owner trustee for VRMTG Asset Trust, ("US Bank") asserts claims (ECF Nos. 1, 31, 94) for foreclosure (Count 1) and breach of note (Count 2) against David W. Thomas and Donna M. Thomas. A bench trial was held on March 23, 2022. The primary dispute between the parties is whether the Notice of Mortgagor's Right to Cure satisfied the notice requirements of 14 M.R.S.A. § 6111 (West 2022) and the notice requirements of the note itself. After hearing the testimony and carefully reviewing the parties' post-trial submissions (ECF Nos. 110, 111, 113, 114, 116, 117), I make the following findings of fact and conclusions of law. *See* Fed. R. Civ. P. 52(a).

1

## I. FINDINGS OF FACT

Donna and David Thomas executed a mortgage on their property located at 63 Goodwin Road in Eliot, Maine, on August 22, 2007. The mortgage named The Mortgage Specialists, Inc. as the lender, and the mortgage secured a $325,000 note executed on the same day. US Bank owns the mortgage pursuant to a series of valid assignments and also holds the note, the original of which I examined at trial. A modification agreement was entered into on June 21, 2010, that increased the principal amount of the loan to $371,866.70 and lowered the interest rate, while also establishing certain future dates at which the interest rate would increase. In addition to principal and interest, the mortgage and the modification agreement obligated the Thomases to include escrow advancements for taxes and insurance in their monthly payments.

The Thomases failed to pay the $2,119.04 which was due on July 1, 2017, for the principal, interest, and escrow amounts for the insurance and taxes. They have not made any payments since. On March 27, 2019, a previous servicer of the Thomases' loan generated a Reinstatement Quote containing certain data about what was owed. The Reinstatement Quote indicated that the outstanding payments included $35,746.63 in principal and interest and $13,727.44 in escrow payments as of the date it was generated. It also indicated that the next payment due on the loan was $2,119.04, consisting of $1,513.03 in principal and interest and $606.01 in escrow payments. Counterintuitively, these figures for the next-due payment did not refer to what would become due the month after the Reinstatement Quote was generated

2

(April 2019); instead, they were associated with the July 1, 2017, date when the Thomases missed their payment (which, in a sense, was still the next payment due when the Reinstatement Quote was generated in March 2019). The payment that would become due on April 1, 2019, was $2,147.09, consisting of $1,711.68 in principal and interest and $435.41 that represented that month's escrow payment.

The prior servicer sent the Reinstatement Quote to its counsel (who also represents US Bank in this litigation), and the numbers contained within the Reinstatement Quote were employed to prepare the Notice of Mortgagor's Right to Cure. The notice was dated April 4, 2019, and the Thomases received it in due course. The notice provided the following guidance to the Thomases on the past-due payments and the amount that they needed to tender to cure the default:

> An itemization of all past due amounts, including, but not limited to, reasonable interest and late charges, attorney's fees and other reasonable fees and costs, causing the loan to be in default is as follows:
>
> | | |
> |---|---|
> | Payments | $37,865.67 |
> | Attorney Fees & Costs | $165.52 |
> | **TOTAL TO CURE DEFAULT:** | **$38,031.19** |

Exhibit 11 at 2.

The $37,865.67 figure listed as "Payments" is the sum of two numbers from the Reinstatement Quote generated in March 2019: (1) the $35,746.63 in missed principal and interest payments from July 2017 through March 2019 and (2) the $2,119.04 next payment due. However, as already discussed, the $2,119.04 amount was inaccurate as to the payment that became due on April 1, 2019 (which was instead $2,147.09), because the $2,119.04 figure reflected the missing payment from July 2017. The

incorrect $2,119.04 figure included $606.01 in escrow payments (the true amount due for escrow payments in April 2019 was $435.41). The other component of the $37,865.67 sum—the $35,746.63 amount for July 2017 through March 2019—reflected only principal and interest, not the $13,727.44 in escrow payments for the same period. Consequently, accounting for the $13,727.44 in missing escrow advances and the accurate amount of $2,147.09 for the payment due on April 1, 2019, the correct total amount of the principal, interest, and escrow payments due when the Notice of Mortgagor's Right to Cure was sent was $51,621.16, and not the $37,865.67 in "Payments" stated in the notice.[1]

The demand in the notice for $38,031.19 (the Payments plus $165.52 in attorney's fees) went unsatisfied, and this lawsuit resulted. David Thomas failed to answer, and default was entered against him (ECF No. 14).[2] Donna Thomas was represented by counsel at the trial, and future references to "Thomas" in this order refer to her. The sole witness at trial was Lawrence Nardi, an employee at Shellpoint Mortgage ("Shellpoint"), the entity that services the loan. Nardi has been employed in the default industry for fifteen years across multiple servicing companies and banks, and he is familiar with the data-management practices at Shellpoint and at

---

[1] The Reinstatement Quote indicates that the Thomases owed $13,727.44 in escrow payments as of March 27, 2019. However, when one adds the escrow payments listed as due between July 2017 and March 2019, the sum is $11,190.81. I do not decide which figure is the correct one, but I use the $13,727.44 figure for convenience. If the $11,190.81 is accurate, then the total amount due on the note when the Notice of Mortgagor's Right to Cure was sent was $49,084.53, not $51,621.16. This difference would not affect the resolution of the issues presented by this case.

[2] David Thomas is not in the military and is thus not entitled to the protections against default judgments for service members. *See Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 33, 96 A.3d 700.

4

other servicing companies, including how mortgage servicers cooperate with law firms in preparation for and prosecution of foreclosure actions.

At the trial, it was proven that, under the note and mortgage, the Thomases owe $314,809.32 in principal; $72,484.33 in interest; $34,099.31 in escrow advances; and $977.31 in late fees. They are due a credit of $143.

## II. CONCLUSIONS OF LAW

### A.   Evidentiary Disputes

Donna Thomas argues that there is no admissible evidence proving that the $37,865.67 listed as "Payments" in the notice is the sum of the $35,746.63 and $2,119.04 amounts from the Reinstatement Quote. Nardi testified that, as a matter of general practice in the mortgage-servicing industry, a reinstatement quote is generated to provide law firms with the information that the firms need to send letters notifying borrowers of the right to cure their defaults. Nardi stated that he reviewed Shellpoint's business records in preparation for his testimony and that those records contained the aforementioned Reinstatement Quote generated by a previous servicer of the loan. He explained that Shellpoint's records also confirm that the Reinstatement Quote was sent to the prior servicer's counsel. The Reinstatement Quote was admitted in evidence without objection. Finally, Nardi also testified that, by examining the Reinstatement Quote, he was able to deduce that the $37,865.67 amount listed as "Payments" was the sum of two of the numbers contained in the Reinstatement Quote: the past-due principal and interest from July 2017 through

March 2019 plus the amount listed as the next payment due (which, again, was actually the amount due for July 2017).

Thus, although Nardi never worked at the prior servicer that created the Reinstatement Quote or at the law firm that prepared the Notice of Mortgagor's Right to Cure, there is admissible testimony explaining which numbers comprise the $37,865.67 figure from the Notice of Mortgagor's Right to Cure. That testimony was uncontradicted at trial.

Thomas also argues that the Notice of Mortgagor's Right to Cure is inadmissible because it does not satisfy the requirements of 14 M.R.S.A. § 6111. Thomas conceded at trial, however, that there is no factual dispute over whether the notice was sent and received, and she does not cite to any authority supporting the view that a notice's failure to satisfactorily inform a borrower of the matters specified in the statute makes that notice inadmissible as evidence of what information was provided to a mortgagor. I instead consider the adequacy of the Notice of Mortgagor's Right to Cure when evaluating the merits of US Bank's foreclosure claim, as a proper notice is a necessary element of proof. *See Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 29 n.16, 96 A.3d 700 ("Although [the defendant] phrases his argument as one regarding the admissibility of the notice of default and right to cure [under the Maine Rules of Evidence], he does not challenge the relevance of the document to the issues at trial or contend that it is not an accurate copy of the notice he received.").

## B.   Count 1: Foreclosure

There are eight elements of proof in a Maine foreclosure action, only one of which is disputed by Thomas in this case: "evidence of properly served notice of default and mortgagor's right to cure in compliance with [the] statutory requirements" of 14 M.R.S.A. § 6111.[3]  *Greenleaf*, 2014 ME 89, ¶ 18, 96 A.3d 700.

Section 6111(1) provides that for certain residential mortgages, including the one at issue here, a mortgagee cannot enforce a mortgage agreement because of a default that consists of the mortgagor's failure to make any required payment until 35 days after providing a written notice that complies with the statute.  The notice must inform the mortgagor of "the right to cure the default" through "full payment of all amounts that are due without acceleration, including reasonable interest and late charges specified in the mortgage or note as well as reasonable attorney's fees."  *Id.* § 6111(1), (1-A)(A).  Of particular relevance here, the notice must also include "[a]n itemization of all past due amounts causing the loan to be in default and the total amount due to cure the default" and "[a]n itemization of any other charges that must be paid in order to cure the default."  *Id.* § 6111(1-A)(B)-(C).

---

[3] The other seven elements are: (1) "the existence of the mortgage, including the book and page number of the mortgage, and an adequate description of the mortgaged premises, including the street address, if any"; (2) "properly presented proof of ownership of the mortgage note and evidence of the mortgage note and the mortgage, including all assignments and endorsements of the note and the mortgage"; (3) "a breach of condition in the mortgage"; (4) "the amount due on the mortgage note, including any reasonable attorney fees and court costs"; (5) "the order of priority and any amounts that may be due to other parties in interest, including any public utility easements"; (6) "after January 1, 2010, proof of completed mediation (or waiver or default of mediation), when required, pursuant to the statewide foreclosure mediation program rules"; and (7) "if the homeowner has not appeared in the proceeding, a statement, with a supporting affidavit, of whether or not the defendant is in military service in accordance with the Servicemembers Civil Relief Act."  *Greenleaf*, 2014 ME 89, ¶ 18, 96 A.3d 700 (alteration omitted).

Thomas argues that the Notice of Mortgagor's Right to Cure fails to satisfy section 6111(1-A)(B) because it does not contain "[a]n itemization of all past due amounts causing the loan to be in default." *Id.* § 6111(1-A)(B).  Specifically, she argues that nowhere does the notice specify the full past-due amount, including the escrow payments from July 2017 through March 2019 and the correct payment due in April 2019.  US Bank responds that the notice was sufficient because, although it could have demanded a higher cure amount than it did, the default would have been cured according to the terms of the notice if the Thomases had tendered the requested $38,031.19 listed as "Total to Cure Default."  For reasons I will explain, Thomas has the better argument.

Subsection (1-A)(B) contains two independent requirements: "[a]n itemization of all past due amounts causing the loan to be in default *and* the total amount due to cure the default." *Id.* (emphasis added).  Regardless of whether a mortgagee chooses to demand a lower amount to cure the default than what is actually past due, the statute plainly provides that the notice must also include "[a]n itemization of all past due amounts causing the loan to be in default." *Id.*  This interpretation is underscored not only by the Legislature's use of the word "and," but also by the fact that the required itemization is of past-due "amounts," whereas the "amount" necessary to cure the default is expressed in the singular. *Id.*  Further, the subsection of the statute that immediately follows provides that the notice must include "[a]n itemization of any other charges that must be paid in order to cure the default." *Id.* § 6111(1-A)(C).  That subsection reveals that if the Legislature intended the notice to

8

contain only an itemization of all charges that must be paid to cure the default, it would have so provided. Instead, it used the broader phrase "[a]n itemization of all past due amounts causing the loan to be in default." *Id.* § 6111(1-A)(B). In short, an itemization of all past-due amounts causing the loan to be in default is a requirement under section 6111(1-A)(B) in addition to a statement of the amount due to cure the default.[4]

Applying the preceding construction of the statute to the facts here, the Notice of Mortgagor's Right to Cure failed to include an itemization of all past-due amounts causing the loan to be in default. As previously stated, although the Notice of Right to Cure indicated that $37,865.67 was due in delinquent payments, the correct amount of the principal, interest, and escrow payments due when the Notice of Mortgagor's Right to Cure was sent was $51,621.16. The past-due amounts should have included all of the escrow payments. I reach this conclusion for two reasons.

First, the modification agreement provides that the Thomases "will be in default if [they] do not comply with the terms of the Loan Documents, as modified by this Agreement" and defines "Loan Documents" to be the mortgage and the note. Exhibit 5 at 4. The mortgage and the modification agreement (which amended the mortgage as well as the note) required monthly escrow payments. Thus, missed

---

[4] Although the plain language of 14 M.R.S.A. § 6111 is clear, I note that the statutory history of subsection (1-A)(B) also supports interpreting the statute's reference to an itemization of all past due amounts as a separate requirement. In 2015, this subsection required only "[a]n itemization of all past due amounts causing the loan to be in default." 14 M.R.S.A. § 6111(1-A)(B) (West 2015). Then the Legislature amended this subsection to insert "and the total amount due to cure the default." P.L. 2015, ch. 36, § 1 (effective Oct. 15, 2015). This history indicates that the need to provide an itemization of all past due amounts is a longstanding and independent requirement, not a superfluous rephrasing of the newer obligation to provide the total amount due to cure the default.

9

escrow payments were amounts causing the loan to be in default. *See* Restatement (Third) of Property (Mortgages) § 8.1 cmt. a (Am. L. Inst. 2022) ("[A]cceleration is not only permitted for failure to pay the mortgage debt promptly, but also for defaults in mortgage covenants to pay taxes, to maintain insurance, to keep buildings intact, to maintain an adequate financial condition, to avoid the commission of waste, and the like.").

Second, Nardi, US Bank's sole witness, testified that the unpaid escrow payments are past-due amounts causing the loan to be in default. The following exchange occurred during his cross-examination:

> Q. So, that number of $38,031.19 is not an itemization of all past due amounts causing this loan to be in default; is it?
>
> A. Well, if you're asking me about 38,000, that's the total of the two amounts above that, which I would call it an itemized list. It says payments and attorneys fees and costs, so it does break it out into two buckets.
>
> Q. But it is not an itemization of all past due amounts; is it?
>
> A. If you're referring to all of the escrow advances and other items that can possibly be listed according to the paragraph above it, it doesn't include additional items.
>
> Q. So, it doesn't include all. Let's use that word, let's use the word, it does not include all past due amounts; does it?
>
> A. Only ones that we are seeking to collect at the time of the letter.
>
> Q. But answer my question, it does not include all past due amounts; does it?
>
> A. Due under the loan, no.

Tr. at 60:7-25; *see also* Tr. at 53:8-54:7, 58:2-59:12.

Accordingly, because the Notice of Mortgagor's Right to Cure stated that the Thomases had failed to make $37,865.67 in payments, but the accurate total—taking into account all delinquent escrow payments and the correct payment due in April 2019—was $51,621.16, the notice does not contain an "itemization of all past due amounts causing the loan to be in default." 14 M.R.S.A. § 6111(1-A)(B).

US Bank's reliance on *Wilmington Trust, National Ass'n as Trustee for MFRA Trust 2015-1 v. Vigneault*, Civil No. 1:19-CV-572, 2021 WL 3598534, at *3 n.3 (D. Me. Aug. 13, 2021), does not persuade me otherwise. In *Vigneault*, the court addressed in a footnote the defendant's argument that the notice of right to cure was inadmissible because it was unreliable. *Id.* The reasons cited were that the notice listed only some of the possible late fees and demanded a late fee that matched a number that the servicer's internal records had marked as waived. *Id.* The court disagreed and further stated that if a mortgagor omits a late charge and the borrower meets the demand stated in the notice, the default has been cured despite the omission. *Id. Vigneault* is thus distinguishable from the circumstances presented here because the court's analysis focused on the effects of "demand[ing]" less to cure the default than what was possible to demand, rather than the failure to itemize all of the past-due amounts causing the loan to be in default. *Id.* These are separate requirements. Moreover, *Vigneault* did not conclude that the late fees qualified as

11

past-due amounts causing the loan to be in default; to the contrary, the court found that the notice did include "the total of the past due amounts."[5] *Id.* at \*2.

"A plaintiff seeking a foreclosure judgment 'must comply strictly with all steps required by statute.'" *Greenleaf*, 2014 ME 89, ¶ 18, 96 A.3d 700 (quoting *Chase Home Fin. LLC v. Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508). "Blocking a lender's foreclosure based on a mathematical or accounting error may be harsh to the mortgagee in some cases. But the Maine Supreme Judicial Court has taken a rigid approach to signal to lenders, servicers, and their attorneys that they must be thorough and meticulous when pursuing foreclosures in order to prevent a claim-preclusive judgment in favor of the borrower." *U.S. Bank Tr., N.A. for LSF9 Master Participation Tr. v. Jones*, 330 F. Supp. 3d 530, 537 (D. Me. 2018). "Before foreclosing on a person's residence, the lender owes a basic statutory responsibility to explain to the borrower what precisely it contends is owed," *Fed. Nat'l Mortg. Ass'n v. Wilson*, No. 2:18-cv-00366, 2019 WL 1915618, at \*3 (D. Me. Apr. 30, 2019), or else the mortgagor would have to decide how to respond to the notice of right to cure with incomplete information. The need to be fully informed as to the full extent of the missed payments is especially important when, as here, the mortgage agreement provides that, if the mortgagee "accepts payments in amounts less than the amount then due, Lender will have the right . . . to demand that [the mortgagor] make immediate payment in full of any amounts remaining due and payable to Lender

---

[5] I also note that the footnote was ultimately addressing the narrow question of whether the notice was so unreliable as to render it inadmissible, and it did not purport to present an in-depth examination of the applicable legal principles. *See Vigneault*, 2021 WL 3598534, at \*3 n.3.

under the Note and under this Security Instrument." Exhibit 2 at 11. Because the Notice of Mortgagor's Right to Cure did not strictly comply with section 6111(1-A)(B), the Thomases are entitled to judgment on US Bank's foreclosure claim.[6]

**C.     Count 2: Breach of Note**

A plaintiff may be entitled to judgment on its underlying contract claim for breach of note even if that plaintiff is not entitled to foreclose on the property. *Jones*, 330 F. Supp. 3d at 538, 545 (entering judgment for the defendant on the foreclosure claim and for the plaintiff on the breach of note claim); *see Nationstar Mortg., LLC v. Nelson*, No. 2:14-cv-00507, 2016 WL 5720710, at *6 (D. Me. Oct. 3, 2016) ("[Plaintiff's] overriding argument that Maine law permits a mortgagee to bring a civil foreclosure action separately from an action on the related promissory note is correct . . . ."). Here, Thomas argues that judgment must instead be entered for her on the breach of note claim because the note itself has a provision that requires a pre-acceleration notice of default that contains the amount due solely under the note, which she argues means that the figure cannot include any escrow advances.

According to Thomas, the Notice of Right to Cure that she received failed to satisfy this requirement because the accurate amount of principal and interest due under the note when the Notice of Mortgagor's Right to Cure was sent was $37,458.31 but the amount listed under "Payments" in the Notice of Mortgagor's Right to Cure

---

[6] Having concluded that the notice failed to inform the Thomases of all past due amounts causing the loan to be in default because the total of missed payments understated the true amount, I do not address the related but separate issue of the level of detail required to satisfy the statute's requirement of an "itemization"—a topic that the parties have not addressed. I also do not reach Thomas's additional argument that the notice violated 14 M.R.S.A. § 6111 because it did not inform her that the escrow payments were being waived or because the then-servicer lacked authority to waive the escrow payments.

13

was $37,865.67—a difference of $407.36. US Bank counters that any notice requirement contained in the note was satisfied because the Notice of Mortgagor's Right to Cure demanded the missing payments of principal and interest, even if it also included one escrow payment. In the alternative, US Bank argues that under the separate provision of the note concerning the waiver of rights of presentment and notice of dishonor, Thomas waived any right to notice of default under the note.

I do not decide which party has the better interpretation of the note. Even if the note were construed as Thomas suggests, I would not be persuaded that the $407.36 difference between the accurate total and the amount described as "Payments" warrants a judgment in her favor on US Bank's breach of note claim. The only authorities that Thomas cites in support of her argument that the $407.36 discrepancy is dispositive are *Greenleaf*, 2014 ME 89, ¶ 31, 96 A.3d 700, and *JPMorgan Chase Bank, N.A. v. Lowell*, 2017 ME 32, ¶ 13, 156 A.3d 727. In those cases, the Law Court stated that plaintiffs must strictly comply with section 6111, which requires notices to provide the precise amount that the mortgagor must pay in order to cure the default. *Greenleaf*, 2014 ME 89, ¶ 31, 96 A.3d 700; *JPMorgan Chase Bank*, 2017 ME 32, ¶ 13, 156 A.3d 727.

Thomas argues that the Law Court's insistence on strict compliance for purposes of section 6111 should apply with equal force to the notice requirement in the note because the two notice requirements share a common purpose. The Law Court has not, however, adopted this reasoning, and Thomas does not cite to any authority supporting her position. To the extent that Thomas is arguing that her

performance should be excused by a material breach, under the circumstances presented, she has not shown that the $407.36 discrepancy was a material breach of the requirements of the promissory note. *See Crowe v. Bolduc*, 334 F.3d 124, 138-39 (1st Cir. 2003). US Bank is therefore entitled to judgment on Count 2.

**D.  Damages**

Finally, the parties disagree about which categories of damages are recoverable by US Bank on its claim for breach of note. I ordered supplemental briefing on this issue (ECF No. 115).[7]

Thomas argues that the recoverable damages include the "principal, interest, late fees[,] and only those costs of collection directly attributable only to the claim for judgment on the Note." ECF No. 116 at 4. Therefore, she contends, US Bank cannot recover $34,099.31 in escrow advances.[8] She bases this argument on a narrow construction of paragraph 6(E) of the note, which provides that "the Note Holder will have the right to be paid back by [the borrower] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law." Exhibit 1 at 2.

---

[7] In its supplemental brief, US Bank requests that this case be stayed pending the final decision of the Maine Supreme Judicial Court, sitting as the Law Court, in *J.P. Morgan Acquisition Corp. v. Moulton* because that decision involves an allegation that a lender in a foreclosure action had not complied with the requirements of 14 M.R.S.A. § 6111 and the decision "may impact the state of the law in this area in Maine." ECF No. 117 at 1-2. However, I do not grant US Bank's request for a stay because the issues presented in *Moulton* are primarily focused on the preclusive effect of a foreclosure judgment entered in favor of a mortgagor after a mortgagee failed to comply with the requirements of section 6111, which does not bear directly on the specific issues presented in this case. *See Law Court Invites Amicus Briefs Regarding Preclusive Effect of Judgment in Favor of Mortgagor on Future Actions to Enforce a Promissory Note and Mortgage*, Me. Supreme Jud. Ct. (Aug. 23, 2022), https://www.courts.maine.gov/news/article.html?id=8695828.

[8] Thomas also argues that the damages cannot include $8,115 in corporate advances, but I do not address this argument because US Bank does not seek recovery of that sum.

She further argues that the escrow balance cannot be recovered because the note did not incorporate the terms of the mortgage by reference.

US Bank contends that it is entitled to damages in the sum of $422,227.27, which includes principal, interest, late fees, and escrow payments. In support of this, US Bank argues that paragraph 6(E) of the note should be interpreted broadly and that the terms of the mortgage are incorporated by reference into the note.

I need not reach the parties' arguments about the proper interpretation of the note because, as described above, the parties entered into a modification agreement which imposed on Thomas the obligation to make escrow payments to provide for, among other things, taxes and insurance premiums. For the reasons discussed below, I conclude, based on the modification agreement, that the note was amended to include the duty to make escrow payments.

First, the modification agreement expressly provides that it "amend[s] and supplement[s]" the "Loan Documents"—which includes both the mortgage and the note. Exhibit 5 at 2. Section 4 of the modification agreement expressly obligates the borrower to make escrow payments, and section 3 incorporates the escrow payments into the overall payment schedule. Nothing in these sections indicate that they were intended only to amend and supplement the mortgage; on the contrary, the broader term "Loan Documents" is used throughout.[9]

---

[9] Thomas, who did not address the modification agreement in her supplemental briefing, has not asserted that the relevant section of the modification agreement only amended the mortgage or otherwise did not impose a binding obligation on her to make escrow payments.

16

Second, there are indications that the parties did in fact intend to modify the note, as well as the mortgage, to include the duty to make escrow payments. The modification agreement amended the payment schedule, which was originally set out in section 3 of the note, to include escrow payments. This provision in the modification agreement was immediately followed by a statement that the amended payment schedule "shall supersede any provisions to the contrary in the Loan Documents." Exhibit 5 at 4. Based on these provisions, it can be inferred that the parties intended to modify the note as well as the mortgage.

As such, I conclude that the modification agreement amended and supplemented the note to impose on Thomas the obligation to make escrow payments. Because Thomas breached her duty under the amended note by not fulfilling that obligation—and by not paying the other amounts which were due—the damages recoverable for breach of note include the $34,099.31 in escrow payments shown by US Bank.

### III. CONCLUSION

Based on the above findings and conclusions, it is **ORDERED** that judgment be entered in favor of Defendants David W. Thomas and Donna M. Thomas on Count 1 and in favor of Plaintiff US Bank on Count 2 in the amount of $422,227.27. Accordingly, US Bank's Motion for Default Judgment (ECF No. 68) is **DENIED IN PART** as to Count 1 of the Complaint and **GRANTED IN PART** as to Count 2 of the Complaint.

**SO ORDERED.**

**Dated: September 29, 2022**

                                                       **/s/ JON D. LEVY**
                                     **CHIEF U.S. DISTRICT JUDGE**